UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOB BARR, WAYNE A. ROOT, LIBERTARIAN PARTY OF MASSACHUSETTS, and LIBERTARIAN NATIONAL COMMITTEE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM F. GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts,<br><br>Defendant. | Case No.: 1:08-cv-11340-NMG |

**Affidavit of Dr. George Phillies in Support of Plaintiffs' Motion for Preliminary Injunction**

I, Dr. George Phillies, hereby depose and state as follows:

1. I was elected as chair of the Libertarian Party of Massachusetts ("LPM") in October 2007. In the Summer of 2007, I served as State Party Political Facilitator, and was charged with overseeing and supporting "candidate recruitment, candidate support, public education, membership outreach, and other political activities."

2. Since 1988, inclusive, the Libertarian Party's candidates for President and Vice President have appeared on Massachusetts general election ballot.

3. Throughout 2007 and into 2008, I was campaigning to secure the presidential nomination of the Libertarian Party. I was a serious candidate for the party's nomination.

4. The Libertarian Party's national nominating convention, at which the general election presidential and vice presidential candidates were chosen, was scheduled to be held on May 22-26, 2008.

5.  The LPM anticipated that the amount of time between the convention and the July 29, 2008 deadline for filing its nominating petition with the town clerks would not be adequate to prepare for and gather the ten thousand Massachusetts signatures required to place the Libertarian candidates on the general election ballot.  Therefore, the LPM needed to begin collecting signatures before the convention in order to meet the statutory requirement of ten thousand signatures.

6.  On July 31, 2007, I sent an email to Kristen Green, an attorney at the Elections Division of the Office of the Secretary of the Commonwealth, in which I inquired about the possibility of candidate substitution.  I informed Ms. Green that the Libertarian Party's national nominating convention would occur over Memorial Day weekend in 2008 and that the party's candidates for President and Vice President would not be known before then, but that the party would need to begin preparing to collect signatures before then.  I asked Ms. Green whether the Secretary would allow the substitution of the Libertarian Party's actual candidates for the candidates on the nominating petition, were the candidates on the nominating petition not to win the general election nomination.

7.  Exhibit 1 to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction contains a true and accurate copy of the email I sent Ms. Green on July 31, 2007.

8.  On October 26, 2007, Ms. Green replied to me via email and advised me that, if the Libertarian Party sought to substitute different candidates for the candidates on the nominating petition, her office would provide a form to effectuate that substitution.

9.  Exhibit 1 to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction contains a true and accurate copy of the email I received from Ms. Green on October 26, 2007.

10. In reliance on the guidance from the Elections Division attorney, my campaign, in conjunction with the LPM and the Libertarian National Committee ("LNC"), began efforts to circulate a nominating petition with me listed as the presidential candidate and Chris Bennett listed as the vice presidential candidate in early 2008.

11. The LNC spent $33,134.88 on its presidential petition drive in Massachusetts. I was listed as the candidate.

12. The LPM also spent $3,013.13 toward collecting the required signatures.

13. My campaign committee, "Phillies 2008," spent $4,366.25 toward collecting Massachusetts signatures.

14. The LPM, LNC, and "Phillies 2008" collected the required signatures to appear on the general election ballot. These signatures were submitted to the town clerks for certification by the July 29, 2008 deadline and the first round of certified signatures were submitted to the Secretary's office on August 13, 2008.

15. I was a serious candidate for the Libertarian Party's presidential nomination. By the time of the convention, I had raised $219,910 for my campaign, which was more than any other candidate except one, Michael Jingozian, who had raised $288,000 and who actually finished behind me in votes at the convention. Barr, the eventual candidate, raised $184,857 by the time of the convention. Root, a primary candidate for President and the eventual nominee for Vice President, had raised $74,292 by the time of the convention, where he finished third. Dr. Mary Ruwart, who finished second in votes at the national convention, had raised only $29,974. All dollar amounts are taken from the sworn candidate reports filed immediately following the national convention with the Federal Election Commission.

16. At the Libertarian Party's nominating convention on May 25, 2008, over ten candidates were vying for the nomination. Bob Barr was chosen to be the party's general election presidential candidate. Wayne A. Root was chosen to be the vice presidential candidate. Both candidates accepted the nominations. I finished fifth in votes.

17. In my capacity as Chair of the LPM, I contacted Ms. Green on May 29, 2008 via email. I wrote that I was not chosen as the Libertarian presidential candidate. I requested the substitution form she had described in her previous correspondence from October.

18. Exhibit 2 to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction contains a true and accurate copy of the email I sent Ms. Green on May 29, 2008.

19. On June 5, 2008, I received via email a letter from Ms. Green, indicating that the Elections Division would not allow the substitution of Barr and Root's names for my and Bennett's names on the upcoming general election ballot.

20. Exhibit 2 to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction contains a true and accurate copy of the email I received from Ms. Green on June 5, 2008. Exhibit 3 to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction is a true and accurate copy of the letter attached to the email I received from Ms. Green on June 5, 2008.

21. I attempted to correct some of Ms. Green's misconceptions about the situation in further correspondence via email later that day. However, Ms. Green maintained that the Elections Division would not allow the previously assured substitution I had inquired about.

22. Exhibit 2 to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction contains a true and accurate copy of the email exchange between myself and Ms. Green on June 5, 2008.

23. By the time I learned of the Elections Division's decision not to permit substitution on June 5, 2008, the LPM, LNC, and "Phillies 2008" campaign had already collected approximately 7,000 signatures. We could not afford to abandon the signatures already collected and "start fresh." There was neither enough time, nor enough money to start over.

Sworn under the pains and penalties of perjury this 15th day of August, 2008.

/s/ George Phillies_____
George Phillies

**CERTIFICATE OF SERVICE**

I, Matthew C. Baltay, hereby certify that a copy of the foregoing, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies were served by hand on all counsel who are not served through the CM/ECF system on August 15, 2008.

/s/ Matthew C. Baltay_____
Attorney for Plaintiffs