UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOB BARR, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM F. GALVIN, as he is SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS, <br><br> Defendant. | CIVIL ACTION <br> NO. 08-11340-NMG |

## SECRETARY'S SUPPLEMENTAL MEMORANDUM

Secretary Galvin submits this memorandum in response to the Court's directive at the preliminary injunction hearing on September 12, 2008, to submit supplemental memoranda discussing the role of presidential electors. Specifically, the Court asked the parties to address whether the role of the electors has any bearing on plaintiffs' request for "substitution" of the names of presidential and vice presidential candidates on the general election ballot, given that the electors are the actual candidates elected by the voters. The presidential electors nominated to support George Phillies and Chris Bennett have met the statutory requirement to serve as electors, enabling Phillies' and Bennett's names to appear on the ballot. These 12 electors, duly nominated to cast electoral votes for Phillies and Bennett, have not expressed any desire to "transfer" their allegiance and to support Bob Barr and Wayne Root.

The "substitution" sought by plaintiffs would directly subvert state and federal law provisions recognizing the vital role of the presidential electors, who are the ones actually elected by voters at the November general election, not the presidential candidates themselves. Plaintiffs' failure to submit any evidence that the slate of electors nominated to support Phillies and Bennett would support "substitution" of Barr and Root provides an additional basis – beyond

the failure to obtain 10,000 voter signatures in support of Barr and Root – to deny "substitution" here.

  The role of presidential electors is governed by both the United States Constitution and state law. The Constitution requires states to appoint electors for President and Vice President and expressly leaves to state legislatures the determination of how those electors shall be chosen. U.S. Const. art. II, § 1, cl. 2. The Commonwealth's Legislature has directed, in Mass. G. L. c. 54, § 151, that "a number of electors, equal to the whole number of senators and representatives in congress to which the commonwealth is entitled, shall be chosen by the voters of the commonwealth in the manner and with the effect provided by [Mass. G. L. c. 54, § 78]" (emphasis added).[1] In turn, Mass. G. L. c. 54, § 78, provides, "In order to vote for presidential electors, the voter shall make a cross (X) in the square at the right of the party or political designation appearing on the ballot at the right of the surnames of candidates for president and vice president, to vote for whom such candidates for electors are nominated; and the making of a cross as aforesaid shall be deemed and taken as a vote for such candidates as presidential electors."[2]

---

[1] Other provisions of state law also reflect that it is presidential electors, not candidates for President and Vice President, who are actually elected by voters at the statewide general election in November. See, e.g., Mass. G.L. c. 53, § 28 (referring to election years in which "presidential electors are to be elected"); Mass. G.L. c. 53, § 41 (referring to office of "presidential elector" to be filled at state election); Mass. G.L. c. 54, § 42 (referring to persons who are qualified to vote "for electors of president and vice president"); Mass. G.L. c. 53, § 70B (referring to election years in which "candidates for presidential electors are to be elected"); Mass. G.L. c. 54, § 43A (referring to office of "Presidential elector" to be voted for at state elections).

[2] In addition, Mass. G. L. c. 53, §§ 6 and 8, require that nomination papers contain the names and addresses of the 12 elector candidates, as well as the signatures of 10,000 voters. Mass. G. L. c. 54, § 43, provides that the names of the candidates for presidential electors shall not be printed on the ballot, but in lieu thereof the surnames of the candidates for president and vice president shall be printed thereon in one line under the designation "Electors of President and Vice President." See 2004 State Election Ballot, attached as Exhibit C to Supplemental Affidavit of Michelle Tassinari.

Accordingly, the "substitution" on the ballot of Barr and Root as presidential and vice presidential candidates, without any showing that they are supported by electors nominated to vote for Phillies and Bennett, would ignore the important role of the electors described above. The 12 electors who signed the nomination papers submitted by Phillies and Bennett signified their support of (and intent to vote at the electoral college for) candidates Phillies and Bennett – not Barr and Root.  See Mass. G.L. c. 54, § 78 (candidates for presidential electors are nominated to vote for specified presidential and vice presidential candidates).[3]  See also Exhibit A to original Tassinari Affidavit (nomination papers submitted by Phillies, reflecting signatures of 12 elector candidates immediately below the names of Phillies and Bennett).  As noted above, the plaintiffs have made no showing that any of the 12 electors who signified their support for Phillies and Bennett support the candidacy of Barr and Root.  Indeed, one of the electors who signed nominating papers in support of Phillies and Bennett, Arthur Torrey, recently stated that he does not support Barr's candidacy.  Supplemental Affidavit of Michelle Tassinari, ¶¶ 3-6. "Substitution" of the names of Barr and Root on the ballot thus would entirely ignore the role of the electors – who "signed up" to support Phillies and Bennett, and no one else – in addition to disenfranchising the thousands of voters who signed nomination papers supporting Phillies and Bennett.

In support of their "substitution" request, plaintiffs have attempted to invoke Mass. G.L. c. 53, § 14, governing vacancies of candidates nominated for a "state, city or town office," due to death, withdrawal, or ineligibility of the nominee prior to the election.  But section 14, if it

---

[3] In the case of recognized political parties, the "political parties" file with the Secretary, by the second Tuesday in September, a form identifying the name of the party's presidential candidate and a list of the persons nominated for presidential electors, "together with an acceptance in writing signed by each candidate for presidential elector on a form to be provided by the state secretary," and "[s]aid acceptance form shall include a pledge by the presidential elector to vote for the candidate named in the filing."  Mass. G.L. c. 53, § 8.

3

applies at all in the context of a presidential election, would apply only to filling vacancies of nominations for presidential electors, since they are the actual candidates to be elected by voters at the election, not to vacancies in nominations for presidential candidates. In other words, since the candidates actually elected by voters at the November general election are the presidential electors – not the presidential candidates themselves – the vacancy provision of section 14 provides no basis for the relief requested by plaintiffs, namely, the "substitution" of the name of a presidential candidate on the ballot.[4]

Moreover, even if plaintiffs attempted to transform their original request – for "substitution" of the names of Barr and Root on the ballot – into a request to "substitute" new presidential <u>electors</u>, such a request would face numerous obstacles, including that section 14 only provides for filling of a vacancy in cases where a candidate dies before the day of election, withdraws, or is found ineligible. But none of the 12 electors who signed nomination papers in support of Phillies and Bennett has died, sought to withdraw as an elector, or been found

---

[4] Plaintiffs argue that "substitution" of Barr and Root is authorized by section 14 because the election laws elsewhere define "state officer" to include "any person . . . chosen at a state election and shall include United States senator and representative in Congress," and "state election" is defined as "any election at which a national, state or county officer" is chosen by "the voters" (defined as a "registered voter," which can refer only to voters registered to vote in Massachusetts). Mass. G.L. c. 50, § 1. This Court should decline to address the question of the proper interpretation of state law. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 117 (1984). Although the Massachusetts Supreme Judicial Court has not considered the question, the Secretary submits that the state court would conclude that section 14 does not contemplate the relief that plaintiffs seek, because the only candidates to whom section 14 conceivably could apply are the presidential electors, who are the persons actually "chosen at [the] state election[.]" Even if the electors are "state officers," on the theory that they are selected at a state election (a point the Secretary does not concede), the President and Vice President are not selected at a state election but rather by a nationwide election at the electoral college and therefore are certainly not "state officers" within the meaning of section 14. A common sense understanding of "state election" is that it applies only to those "national" offices selected by Massachusetts voters alone (United States Senator and Representative); "state election" cannot reasonably be understood to refer to election of the President, who is selected by electors chosen throughout the nation.

ineligible to serve as an elector. In addition, the time for withdrawal has long since passed,[5] so that, even if the 12 electors identified in Phillies' nomination papers attempted to "withdraw" en masse in order to make way for a new slate of electors who support Barr and Root (who have no demonstrated Massachusetts voter support), or even a slate of new electors who support Phillies and Bennett, it would be too late for them to do so.[6]

In recognition of the imminent deadline for printing of the ballots, the Secretary respectfully urges the Court to render an order denying the relief sought by the plaintiffs as soon as is practicable, with a memorandum of decision to follow, if necessary, in order to avoid delays in the transmission of ballots to military and overseas voters governed by the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§ 1973ff-1973ff6. Although the contractual deadline for the Secretary to provide final names of candidates to the printer is September 29, a preliminary list of candidates will be provided immediately following the September 16 state primary, which has now concluded. However, actual printing of the ballots cannot begin until after resolution of this case, because the office of electors for President and Vice President appears first on the ballot. See Tassinari Affidavit at ¶¶ 4-8.

---

[5] Mass. G.L. c. 53, § 13 (candidate may withdraw his name from nomination by filing a signed request "within the time prescribed by section eleven for filing objections to certificates of nomination and nomination papers and no such requests for withdrawals shall be received after such time has expired."); id. § 11 (objections to nomination papers to be filed with Secretary in accordance with Mass. G.L. c. 55B); Mass. G.L. c. 55B, § 5, ¶ 1 (objections to nomination papers for state election to be filed with Secretary within 72 hours after deadline for filing nomination papers – this year, August 26). Mass. G.L. c. 53, § 10, ¶ 1; Tassinari Aff. ¶ 9.

[6] Plaintiffs place undue emphasis on the fact that, on one occasion, in 2000, the Secretary allowed the "substitution" of a "Reform Party" *vice presidential* candidate. In that case, however, the presidential candidate (unlike Barr) had obtained the requisite 10,000 voter signatures and the Secretary received the written approval of all of the electors. Tassinari Affidavit ¶ 1. That situation was further distinguishable because the vice presidential candidate for whom "substitution" was sought was not selected until after the late July deadline for submission of nominating papers to local election officials. See Secretary's Opp. to Plaintiffs' Motion for Prelim. Inj., at p. 17.

        Respectfully submitted,

        SECRETARY OF THE COMMONWEALTH
        OF MASSACHUSETTS,

        By his attorneys,

        MARTHA COAKLEY
        ATTORNEY GENERAL

        /s/ Amy Spector
        Amy Spector, BBO No. 557611
        Julie B. Goldman, BBO No. 648489
        Timothy Casey, BBO No. 650913
        Assistant Attorneys General
        Office of the Attorney General
        One Ashburton Place
        Boston, MA  02108
        (617) 727-2200, ext. 2076
        amy.spector@state.ma.us

September 17, 2008

Certificate of Service

     I hereby certify that the above Supplemental Memorandum was filed through the Electronic Case Filing (ECF) system on September 17, 2008, and thus copies will be sent electronically to the registered participants as identified on the Court's Notice of Electronic Filing (NEF); paper copies will be served by first-class mail, postage pre-paid, to those indicated on the NEF as non-registered participants.

        /s/ Amy Spector
        Amy Spector