United States District Court
District of Massachusetts

```
                                      )
BOB BARR, WAYNE A. ROOT,              )
LIBERTARIAN PARTY OF                  )
MASSACHUSETTS, and LIBERTARIAN        )
NATIONAL COMMITTEE, INC.,             )   Civil Action No.
        Plaintiffs,                   )   08-11340-NMG
                                      )
        v.                            )
                                      )
WILLIAM F. GALVIN, as he is           )
SECRETARY OF THE COMMONWEALTH OF      )
MASSACHUSETTS,                        )
        Defendant.                    )
                                      )
```

MEMORANDUM & ORDER

GORTON, J.

Plaintiffs Bob Barr ("Barr") and Wayne A. Root ("Root") are the nominees of the Libertarian Party for the offices of President and Vice President of the United States, respectively. They, together with the remaining plaintiffs in this case, i.e. the Libertarian Party of Massachusetts and the Libertarian National Committee, Inc., seek a preliminary injunction that would order the defendant to place the names of Barr and Root on the Massachusetts ballot for the 2008 presidential election.

I. **Background**

  A. **Factual Background**

Because the Libertarian Party is not one of the recognized "political parties" in the Commonwealth of Massachusetts, its

candidates may appear on an election ballot only if it submits a valid nominating petition. Such a petition must designate 12 electors, be signed by at least 10,000 voters, and be submitted within sufficient time to permit Town Clerks to prepare for the election. M.G.L. c. 53, §6. In 2008, the deadline for filing nominating petitions was July 29.

Beginning in late July, 2007, the plaintiffs began preparing for the 2008 presidential election. The nominating convention for the Libertarian Party was not held until late May, 2008, however, thus forcing the plaintiffs to make a choice between waiting until after the convention and collecting all 10,000 signatures within two months or guessing who their nominees would be and circulating petitions for candidates who might not eventually be their party's nominees. The plaintiffs chose the latter course, gathering signatures in support of Dr. George Phillies ("Phillies"), who is the Chair of the Libertarian Party of Massachusetts, for president, and Chris Bennett ("Bennett") for vice president. They eventually collected over 15,000 signatures on the Phillies-Bennett petitions.

In July, 2007, Phillies inquired of the Elections Division of the Office of the Secretary of the Commonwealth ("the Division") as to whether the Libertarian Party would be allowed to substitute the names of the nominees actually chosen at its convention, in the event that they were not Phillies and Bennett.

The Division responded, via e-mail, through one of its attorneys, Kristen Green ("Attorney Green"), on October 26, 2007, that the Libertarian Party could "prepare a form that allows members of [that] party to request the substitution of the candidate." The plaintiffs understood the reponse as an assurance that a substitution would be allowed and proceeded accordingly.

Barr and Root ultimately defeated Phillies and Bennett and won the Libertarian Party's nomination. Immediately thereafter, on May 29, 2008, the plaintiffs reestablished contact with the Division and sought to substitute the nominees' names on the petitions they had gathered. On June 5, 2008, however, the Division informed the plaintiffs that no substitution would be permitted because it viewed Phillies and Bennett as having been mere "stand-ins" who were not actually seeking their party's nomination. By that time, the plaintiffs had collected approximately 7,000 signatures on behalf of Phillies and Bennett. They determined that it would be impossible for them to abandon those signatures and the resources that had been devoted to collecting them to start afresh. The plaintiffs chose, instead, to continue gathering signatures on the original petition and to challenge in court the Commonwealth's refusal to allow substitution.

The basis for this lawsuit, and for this motion for injunctive relief, is twofold. First, the plaintiffs allege that

the Commonwealth is estopped from opposing the motion, or denying substitution, by the statements made by Attorney Green to Phillies in October, 2007. They argue further that the statutory scheme governing substitution is unconstitutionally vague and that, as implemented by the defendant, it places unconstitutional, unfettered discretion in the hands of government officials.

Before this Court is the plaintiffs' motion for a preliminary injunction enjoining the defendant from printing ballots for the 2008 presidential election without the names of Barr and Root as the candidates of the Libertarian Party.

### B. Procedural History

On August 6, 2008, the plaintiffs filed a complaint alleging violations of their rights to freedom of speech, voting and association and to equal protection of the laws under the First and Fourteenth Amendments of the United States Constitution. The plaintiffs filed the pending motion for preliminary injunction on August 15, 2008, and defendant William F. Galvin, Secretary of the Commonwealth of Massachusetts, filed his opposition on August 29, 2008. A hearing on this matter was held on September 12, 2008.

## II. Analysis

### A. Legal Standard

To obtain preliminary injunctive relief under Fed. R. Civ.

P. 65, a movant must demonstrate

> (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest.

Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (citation omitted). Likelihood of success on the merits is the critical factor in the analysis. Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) (citations omitted).

### B. Application

Plaintiffs have met their burden of proving all four elements required to obtain a preliminary injunction, as hereinafter described.

#### 1. Likelihood of Success on the Merits

##### a. Estoppel

As an initial matter, it is noted that "estoppel against the government if it exists at all is hen's-teeth rare." Costa v. INS, 233 F.3d 31, 38 (1st Cir. 2000). In addition to the traditional elements of estoppel, a party pressing such a claim against the government must demonstrate "affirmative misconduct" on the part of the government. Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 67 (1st Cir. 1999). No such showing has been made here. At worst, Attorney Green's email to Phillies, suggesting that her office would prepare a form on which the plaintiffs could request substitution, was vague. It made no

promise that the request for substitution would be granted. The plaintiffs have offered no evidence whatsoever that Attorney Green mis-stated government policy, much less that she did so deliberately or maliciously. The government will not be estopped from opposing this motion or from defending the underlying lawsuit.

### b. The Constitutionality of the Substitution Process with Respect to Presidential Nominees on Election Ballots

The first question that must be addressed in evaluating the plaintiffs' constitutional claims is what standard of review applies. Actions of the state with implications on ballot access are subject to a sliding scale, with more searching review applied to more burdensome regulations. McClure v. Galvin, 386 F.3d 36, 41 (1st Cir. 2004). Voting regulations imposing "severe burdens" must be narrowly tailored to a compelling state interest, but "reasonable, nondiscriminatory restrictions" will usually be justified by "important regulatory interests." Id., citing Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997).

In this case, the plaintiffs challenge the constitutionality of the Massachusetts statutory scheme for the substitution of presidential nominees. The most relevant statute, M.G.L. c. 53, §14, refers to candidates "nominated for a state, city or town office." On its face, that category does not appear to encompass

candidates for the office of President of the United States. Another statute, M.G.L. c. 50, §1, however, defines a "state officer" as "any person...chosen at a state election" and a "state election" as "any election at which a national, state or county officer...is to be chosen by voters." That language has the effect of incorporating statewide elections for federal offices within the purview of state election law.

It is evident, nonetheless, that the terms "state officer" and "state office" have been used without precision. A "state officer" is, ultimately, defined as "a national, <u>state</u> or county officer." Thus, the category of "state officers" is defined to be broader than itself, a nonsensical conclusion. It is, therefore, ambiguous whether the substitution process set forth in §14 applies to presidential nominees. If it does not, interested parties are left with no statutory guidance on the issue. Such ambiguity in the law is evidenced by the actions of the Election Division itself, which suggested, via Attorney Green in October, 2007, a method for substitution of a political nominee but took a different stance in June, 2008, when it refused to entertain the specific substitution of Barr-Root for Phillies-Bennett.

As such, a minor political party, desiring to substitute its presidential nominee on the ballot in Massachusetts is left to guess how, if at all, to do so in compliance with the law.

Surely there can be no state interest that would justify such a burden. Therefore, M.G.L. c. 53, §14 will likely fail constitutional scrutiny as applied to the plaintiffs under the McClure test, even without specifically determining whether the statute is void for vagueness or grants unfettered discretion to the Commonwealth. 386 F.3d at 41; see also Anderson v. Firestone, 499 F. Supp. 1027, 1030 (D.C. Fla. 1980) (finding that independent candidates for president and vice president were denied equal protection of the laws by the state's failure to allow for substitution of the vice-presidential candidate listed on the petitions). For this reason, there is a substantial likelihood that the plaintiffs in this case will prevail on the merits of their constitutional claims.

### 2. Irreparable Harm, Balance of Harms and the Public Interest

The remaining factors to be considered with respect to the imposition of a preliminary injunction weigh overwhelmingly in favor of the plaintiffs. The plaintiffs will undoubtedly suffer irreparable harm if this injunction is denied because the ballots will be printed without the names of the candidates actually chosen to represent the Libertarian Party in the 2008 presidential election. No damages or other legal remedy can compensate for a missed election. See Duke v. Connell, 790 F. Supp. 50, 52-53 (D.R.I. 1992) (finding irreparable harm where, if a motion for a preliminary injunction were denied, ballots would

be printed without the name of a major party candidate in the Rhode Island primary).

With respect to the balancing of the harms, the deprivation of ballot access to the plainitiffs is a harm at least as great as, and probably greater than, any potential harm to the government's responsibility to ensure an orderly election. See Williams v. Rhodes, 393 U.S. 23, 30 (1968) (lamenting that ballot access restrictions burden the right to free assocation and the right to vote, both of which, "of course, rank among our most precious freedoms"); Strahan v. Frazier, 156 F. Supp. 2d 80, 93-94 (D. Mass. 2001), quoting Batchelder v. Allied Stores International, Inc., 388 Mass. 83, 91 (1983) ("Ballot access is of fundamental importance in our form of government because through the ballot the people can control their government."). Moreover, any such harm to the government is minimized by the fact that the plaintiffs in this case clearly were not attempting to circumvent the election laws, nor have they circumvented them.

In the absence of an injunction, Phillies and Bennett will remain on the ballot, even when no one disputes that Barr and Root are the Libertarian nominees for president and vice president. No public interest is served in having the wrong nominees on the ballot. Indeed, conversely, the public interest is advanced by including the right nominees on the ballot to avoid voter confusion. The Secretary asserts an interest in

protecting the integrity of the election process but that interest is not threatened here, where the evidence indicates that the plaintiffs have made a good faith effort to comply with the law.[1]  C.f. In re The Substitute Nomination Certificate of Bob Barr as the Libertarian Candidate for President of the United States, No. 414 M.D. 2008, slip op. at 6 (Pa. Commw. Ct. Sept. 5, 2008) (finding that the substitution of Barr for the Libertarian candidate listed on the nomination papers before the Libertarian National Convention was not intended to mislead Pennsylvanian voters).  For these reasons, the Court finds that the public interest would be ill-served by the denial of a preliminary injunction here.

---

[1] The fact that the signators of the plaintiffs' petitions were expressing sponsorship of the Libertarian Party electors who, in turn, were pledged to the original Libertarian candidates is indicative of the fact that no disenfranchisement will be wrought on those signators (nor deception on the electorate) by allowing the substitution on the ballot of the actual nominees of the Libertarian Party or, in the case of the one elector who has expressed an unwillingness to be pledged to Barr and Root, to allow the substitution of a new elector who will be so pledged. In any event, there is no question that for whomever signators were signing, i.e. the electors, the candidates or the party, all three favor substitution.

**ORDER**

In accordance with the foregoing, the plaintiffs' motion for a preliminary injunction (Docket No. 6) is **ALLOWED**, and a preliminary injunction in the form annexed hereto will enter.

**So ordered.**

                                                  /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 22, 2008