UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOB BARR, et al.,<br><br>                Plaintiffs,<br><br>v.<br><br>WILLIAM F. GALVIN, as he is SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS,<br><br>                Defendant. | CIVIL ACTION<br>NO. 08-11340-NMG |

**STATEMENT OF DEFENDANT SECRETARY
OF THE COMMONWEALTH PURSUANT TO LOCAL RULE 56.1**

In support of his motion for summary judgment, defendant William F. Galvin, Secretary of the Commonwealth of Massachusetts ("Secretary"), respectfully submits this statement of material facts as to which there is no issue to be tried, in accordance with Local Rule 56.1. The Secretary includes certain statements of law to provide context for understanding the facts.

1. In the case of a presidential election, the actual candidates who are nominated for election and who are elected at the statewide election are presidential electors, rather than the candidates for President and Vice President themselves. Mass. G.L. c. 53, § 8; Mass. G.L. c. 54, § 78. By law, the names of the presidential and vice presidential candidates appear on the ballot underneath the office of "Electors of President and Vice President," but the names of the individual electors do not appear on the ballot. Mass. G.L. c. 54, § 43. See also Affidavit of Michelle K. Tassinari in Support of Secretary's Motion for Summary Judgment, dated March 31, 2009 ("Tassinari Aff.") ¶¶ 4, 38 and Tassinari Aff. Ex. K (copy of Massachusetts 2008 State Election ballot). A vote marked next to the name of the presidential and vice-presidential candidates identified on the ballot is deemed a vote for the electors who have pledged or

signified their support for those presidential and vice-presidential candidates. Mass. G.L. c. 53, § 43. By virtue of the electoral college system established in the Constitution, it is the electors who actually elect the President and Vice President. U.S. Const. art. II, § I, cl. 2; U.S. Const. Amend. XII.

2. Massachusetts recognizes, as a "political party," a political organization that either had a candidate for statewide office who received at least 3% of the votes in the previous biennial state election or that enrolled at least 1% of the total number of registered voters in the Commonwealth. Mass. G.L. c. 50, § 1.

3. Following the 2006 election, and up to the time of the November 2008 election, there were four recognized "political parties" in Massachusetts: Democratic, Republican, Green-Rainbow, and Working Families. Tassinari Aff. ¶ 5. At the time of the November 2008 election, the "Libertarian Party" of Massachusetts was not a recognized political party in Massachusetts but rather "Libertarian Party" was a "political designation" affiliated with a national organization. Tassinari Aff. ¶ 5; Mass. G.L. c. 50, § 1.

4. On September 21, 2007, the Elections Division of the Secretary's Office received an e-mail from George Phillies, the chair of the "Libertarian Party of Massachusetts" and a candidate for President. Tassinari Aff. ¶ 11 and Tassinari Aff. Ex. A.

5. The e-mail forwarded an earlier e-mail, dated July 31, 2007 (which was incorrectly addressed and previously had not been received by the Elections Division), inquiring about the preparation of nominating papers for President and Vice President in the November 2008 general election. Tassinari Aff. ¶ 12 and Tassinari Aff. Ex. A. In the e-mail, Phillies inquired as to whether, if the presidential candidate identified on the nominating papers were not selected at the "Libertarian Party" national convention, the name of the nominee selected at the convention

could be "substituted" on the ballot in place of the candidate named on the nominating papers. Tassinari Aff. Ex. A.

6. A staff attorney in the Elections Division responded in an e-mail on October 26, 2007, stating that, in the event that the Libertarians, following their convention, were to seek to substitute different candidates from those identified on nomination papers, "our Office can prepare a form that allows members of the party to request the substitution of the candidate. All of the electors who appear on the nomination papers will need to complete the form." (emphasis added). Tassinari Aff. ¶ 13; Complaint Ex. A.

7. For the November 2008 general election, nomination papers were made available by the Secretary's Office on February 6, 2008. Tassinari Aff. ¶ 6; Mass. G.L. c. 53, § 47.

8. Nomination papers are available free of charge at the Secretary's Office. In addition, nomination papers may be filled out by hand, and a political organization or candidate who wishes to gather voter signatures on nomination papers can use volunteers to gather the signatures. Tassinari Aff. ¶ 9.

9. In 2008, the deadline for non-party candidates (such as the Libertarians, who at that time were not a recognized party) to submit such nomination papers to the local election officials for certification was July 29, 2008, pursuant to Mass. G.L. c. 53, § 7. Tassinari Aff. ¶ 7. This deadline applied to candidates for presidential electors supporting non-party presidential hopefuls such as George Phillies and Bob Barr. Tassinari Aff. ¶ 7; Mass. G.L. c. 53, § 7. Following certification by the local election officials (verifying that the names of voters identified on the nomination papers are registered voters in the locality who are qualified to sign the papers), the nomination papers were required to be filed with the Secretary's Office by the last Tuesday in August, which, in 2008, was August 26. Tassinari Aff. ¶ 8.

10. For the November 2008 ballot, the deadline for recognized political parties to submit their list of presidential elector candidates to the Secretary, pursuant to Mass. G.L. c. 53, § 8, was September 9, 2008. Tassinari Aff. ¶ 10.

11. At some point in 2008, Phillies, in conjunction with the "Libertarian Party of Massachusetts" and the "Libertarian National Committee," began to circulate nominating papers designating Phillies and Chris Bennett as "Libertarian" candidates for President and Vice President. Complaint ¶¶ 1, 7; Affidavit of George Phillies in Support of Plaintiffs' Motion for Preliminary Injunction ("Phillies Aff.") ¶ 10. Phillies collected approximately 7,000 signatures by early June 2008. Phillies Aff. ¶ 23. See also Tassinari Aff. ¶ 17 and Tassinari Aff. Ex. E.

12. Phillies competed against Bob Barr for the nomination of the national "Libertarian Party" (which was not an entity recognized as a political party in Massachusetts) at its national convention in Denver in May 2008. Cplt. ¶ 8. On May 25, 2008, Barr and Wayne Root were nominated at the convention as candidates for President and Vice-President, and they accepted the nominations. Cplt. ¶ 17.

13. Following the selection of Barr and Root at the "Libertarian" national convention, Phillies contacted the Elections Division on May 29, 2008, by e-mail, explaining that he had not been chosen at the convention and asserting his "understanding that substitution [of Barr and Root] could be arranged." Tassinari Aff. ¶ 14 and Tassinari Aff. Ex. B.

14. An Elections Division staff attorney responded in a letter dated June 5, 2008, stating that substitution of candidate names was not warranted in the present circumstances, because the deadline for submitting nomination papers to the local election officials was not until July 29, 2008, and "the party has almost 2 months to obtain the requisite number of signatures and comply with the statutory requirements to obtain ballot access." Tassinari Aff. ¶ 15 and

4

Tassinari Aff. Ex. C.  The letter closed by advising Phillies that the Libertarians should obtain signatures for the convention-endorsed candidates, Barr and Root, "instead of continuing to get signatures on nomination papers with candidates who are not the party's nominees." Tassinari Aff. Ex. C.

15. In an e-mail dated June 13, 2008, to Sean Haugh, the Political Director of the Libertarian National Committee, the Elections Division staff attorney reiterated the Secretary's view that substitution was not authorized under the circumstances.  Tassinari Aff. ¶ 16 and Tassinari Aff. Ex. D.  The e-mail emphasized that substitution had been allowed only in very specific circumstances in which there was no statutory mechanism to allow the nominated candidate to be placed on the ballot.  Tassinari Aff. Ex. D.  In contrast, the staff attorney explained, "there remains a statutory process to gain ballot access for candidates nominated at your national convention."  Tassinari Aff. Ex. D.  The staff attorney therefore reiterated that the Libertarians should collect signatures for Barr and Root, as the newly nominated candidates.  Tassinari Aff. Ex. D.

16. Phillies continued to circulate Phillies/Bennett nominating papers in June and July, and filed over 15,675 signatures with local election officials by July 29, 2008.  Cplt. ¶ 41; Phillies Aff. ¶ 14; Tassinari Aff. ¶ 17.  On August 13, 2008, 15,675 certified signatures were filed with the Secretary's Office, in addition to the other necessary paperwork to qualify for ballot placement.  Tassinari Aff. ¶ 17.  The other necessary paperwork included the written acceptance of each of the 12 electors as well as certificates of voter registration for the electors.  Tassinari Aff. ¶ 17.

17. Barr and Root did not submit nomination papers for electors supporting them to the Secretary, nor did they provide any evidence to the Secretary that they gathered 10,000 voter

signatures or identified 12 qualified electors who supported their candidacies.  Tassinari Aff. ¶ 18.

18.  Other non-party presidential candidates have satisfied the Massachusetts ballot requirement and collected signatures in less than the time period that plaintiffs had to gather and file signatures (whether measured from (1) the date of Barr's and Root's selection at the national "Libertarian" convention on May 25, 2008, to the deadline for filing nomination papers with local officials, on July 29, 2008, a period of 65 days; or (2) from the date of the Secretary's June 5, 2008 letter, explaining that "substitution" was not authorized, to the July 29 deadline, a period of 54 days).  Tassinari Aff. ¶¶ 19-21.

19.  For example, in June 2008, the Nader campaign, having learned that one of the presidential electors identified on its nominating papers did not meet the enrollment requirements set forth in the election law, sought to substitute the name of a different elector.  Tassinari Aff. ¶ 21.  On June 3, 2008, the Secretary's Office notified the Nader campaign that it could not substitute elector names and therefore would be required to circulate new nomination papers with 12 qualified elector candidates.  Tassinari Aff. ¶ 21.  The campaign thereafter obtained new blank nomination papers, on June 17, 2008, and, on August 20, 2008, the campaign filed 15,694 certified signatures with the Secretary and the other necessary paperwork to qualify for ballot access, including the written acceptances of all 12 electors and certificates of voter registration for each elector.  Tassinari Aff. ¶ 21.  Accordingly, the Nader campaign collected at least 15,694 signatures in only 42 days, i.e., between June 17, 2008, and July 29, 2008, when the nomination papers were required to be submitted to local officials for certification.  Tassinari Aff. ¶ 21.

20.  Other non-party candidates also have been able to gain ballot access for slates of electors pledged to them, both in the November 2008 election and in previous elections.  On

August 25, 2008, the campaign of presidential candidates Chuck Baldwin and Darrell Castle filed over 15,000 certified signatures with the Secretary and met the other ballot access requirements, and electors for Baldwin and Castle were on the November 2008 ballot under the political designation "Constitution."  Tassinari Aff. ¶ 22.

21.  In 2000, two non-party campaigns met the ballot access requirements for presidential electors.  Electors for presidential and vice-presidential candidates John Hagelin and Michael Tompkins were on the ballot under the political designation "unenrolled," and electors for presidential and vice-presidential candidates Ralph Nader and Winona LaDuke were on the ballot under the political designation "Massachusetts Green Party.  Tassinari Aff. ¶ 23.  All of these candidates met the 10,000 signature requirement.  Tassinari Aff. ¶ 23.

22.  In 1996, three non-party campaigns met the ballot access requirements for presidential electors.  Electors for John Hagelin and Michael Tompkins were on the ballot under the political designation "Natural Law"; electors for Monica Morehead and Gloria LaRiva were on the ballot under the political designation "Workers World"; and electors for Ross Perot and Pat Choate were on the ballot under the political designation "Reform."  Tassinari Aff. ¶ 24.  All of these candidates met the 10,000 signature requirement.  Tassinari Aff. ¶ 24.

23.  In addition, petitioners for three ballot initiatives obtained the requisite number of signatures to have their initiatives printed on the ballot in 2008, each collecting over 11,000 signatures in a 41-day period, amounting to 268 signatures per day, a more demanding requirement than that applicable here, because initiative petitioners may not gather more than one quarter of their signatures from any one county.  Tassinari Aff. ¶ 25.  The 10,000 signatures that Barr and Root were required to obtain, in a period of 65 days, amounted to just 154 signatures a day.  Tassinari Aff. ¶ 19.  If the relevant time period during which Barr and Root

7

could gather signatures instead was measured as 54 days, see supra ¶ 18, the 10,000 signatures required to be collected would amount to 185 signatures a day. Tassinari Aff. ¶ 19.

24. One statewide candidate designated as a "Libertarian" in the November 2008 election, Robert J. Underwood, a candidate for United States Senator from Massachusetts, received over 3% of the total votes for that office and, as a result, the Libertarian Party currently is a recognized political party in Massachusetts. Tassinari Aff. ¶ 39. Barr and Root did not receive 3% of the vote. Tassinari Aff. ¶ 39.

25. As of the time period relevant here, i.e., prior to the 2008 election, in the most recent statewide election in Massachusetts (in 2006), 2,243,835 voters voted. Tassinari Aff. ¶ 26. As a percentage of the 2,243,835 voters who voted in that election, 10,000 signatures represents only 0.45%. Tassinari Aff. ¶ 26.

26. In the 2004 statewide election, 2,927,455 voters voted. Tassinari Aff. ¶ 27. As a percentage of the 2,927,455 voters who voted in that election, 10,000 signatures represents only 0.34%. Tassinari Aff. ¶ 27.

27. In 2000, the Secretary allowed the substitution of a vice presidential candidate in the case of the "Reform Party," a political designation in Massachusetts that was affiliated with a national organization. Tassinari Aff. ¶ 28. In that case, the Reform Party had submitted the requisite number of signatures for electors supporting presidential and vice presidential candidates, but then a different candidate for vice-president was nominated at its national convention in August, after the deadline for submitting nomination papers to local election officials for certification had passed. Tassinari Aff. ¶ 28. Since the deadline for filing with the local election officials had already passed by the time the vice presidential candidate was selected at the national convention, it was not possible at that time for the Reform Party to follow the statutory mechanism of obtaining signatures for the new candidate. Tassinari Aff. ¶ 28. In allowing substitution in that rare circumstance, however, the Secretary's Office required a

written request signed by all of the qualified electors printed on the nomination papers, since the persons actually elected at the general election are the electors for President and Vice President. Tassinari Aff. ¶ 28.

28. In 1995, the Secretary's Office received an inquiry regarding ballot substitution for the U.S. Taxpayers Party, which was not a recognized political party in Massachusetts and which held its convention after the deadline for filing nominating papers. Tassinari Aff. ¶ 29. The candidates in that case did not qualify for ballot access and therefore substitution ultimately was not allowed. Tassinari Aff. ¶ 29.

29. In 2004, the Secretary's office informed the Nader for President campaign that substitution of a vice presidential candidate would not be allowed. Tassinari Aff. ¶ 30 and Tassinari Aff. Ex. F. In particular, the Secretary explained that, unlike the circumstances of the Reform Party in 2000, the Nader campaign's attempt to change its vice-presidential candidate did not result from selection of a different vice-presidential candidate at a national convention occurring after the deadline for filing nomination papers. Tassinari Aff. ¶ 30 and Tassinari Aff. Ex. F.

30. An article appearing in the on-line Worcester Telegram, dated August 9, 2008, reported that Phillies and Barr "diverge significantly" in their political views, and stated that Phillies, "who styles himself a 'centrist' Libertarian," referred to Barr as a "'right-wing Republican' Libertarian whose stances against same-sex marriage and for the war on drugs are, to him [Phillies], contrary to basic Libertarian principles of individual freedom." Tassinari Aff. ¶ 31 and Tassinari Aff. Ex. G.

31. An article appearing in the on-line Boston Globe, dated August 15, 2008, quoted Phillies as having stated that nominating Barr as the Libertarian Party candidate "'is the

equivalent of nominating an Imperial Wizard of the KKK to lead a party of African-Americans.'"  Tassinari Aff. ¶ 32 and Tassinari Aff. Ex. H.

32.  None of the presidential electors identified on the nomination papers submitted by the Phillies/Bennett campaign filed a request with the Secretary seeking to withdraw as candidates, nor were any of those electors found ineligible to serve as electors.  Tassinari Aff. ¶ 33.

33.  As of September 16, 2008, a website posting reflected that Arthur Torrey, one of the candidates for presidential elector identified on nomination papers submitted on behalf of Phillies and Bennett, had stated that he did not support the substitution on the ballot of Barr and Root for Phillies and Bennett.  Tassinari Aff. ¶ 34 and Tassinari Aff. Ex. I.  The website posting indicated that Mr. Torrey had sent the Secretary's office correspondence that contained the contents of the website posting.  Tassinari Aff. Ex. I.

34.  The Information Technology Department of the Secretary's Office retrieved an e-mail from Mr. Torrey to the Secretary's office, which was incorrectly addressed and therefore was originally undeliverable to the addressee.  Tassinari Aff. ¶ 37.  The e-mail from Mr. Torrey stated that "I will NOT pledge to vote for Barr/Root in the event that their ticket wins the vote in Mass. and I will NOT sign any agreement to authorize the substitution of their names on [sic] for those of Phillies/Bennet [sic] on the presidential ballot."  Tassinari Aff. Ex. J.

35.  Ms. Tassinari contacted Mr. Torrey, and he informed her that he had communicated his position to counsel for plaintiffs in this litigation and had been instructed by counsel for plaintiffs to direct all inquiries to them.  Tassinari Aff. ¶ 36.

36. On the November 2008 ballot in New Hampshire, both Phillies/Bennett and Barr/Root appeared as "Libertarian" candidates for President and Vice-President. Tassinari Aff. ¶ 40 and Tassinari Aff. Ex. L.

        Respectfully submitted,

        SECRETARY OF THE COMMONWEALTH
        OF MASSACHUSETTS,

        By his attorneys,

        MARTHA COAKLEY
        ATTORNEY GENERAL

        /s/ Amy Spector
        Amy Spector, BBO No. 557611
        Timothy J. Casey, BBO No. 650913
        Julie B. Goldman, BBO No. 648489
        Assistant Attorneys General
        Office of the Attorney General
        One Ashburton Place
        Boston, MA  02108
        (617) 727-2200, ext. 2076
        amy.spector@state.ma.us

March 31, 2009

<u>Certificate of Service</u>

    I hereby certify that the above Statement was filed through the Electronic Case Filing (ECF) system on March 31, 2009, and thus copies will be sent electronically to the registered participants as identified on the Court's Notice of Electronic Filing (NEF); paper copies will be served by first-class mail, postage pre-paid, to those indicated on the NEF as non-registered participants.

        /s/ Amy Spector
        Amy Spector