UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOB BARR, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM F. GALVIN, as he is SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS, <br><br> Defendant. | CIVIL ACTION <br> NO. 08-11340-NMG |

### SECRETARY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant William F. Galvin, Secretary of the Commonwealth ("Secretary") opposes plaintiffs' motion for summary judgment on the grounds set forth in the memorandum of law previously filed in support of the Secretary's motion for summary judgment, which is incorporated by reference, and for the additional grounds set forth below.

**I.    The Court's Ruling on Plaintiffs' Motion for Preliminary Injunction with Respect to Plaintiffs' Claim Challenging the Constitutionality of Mass. G.L. c. 53, § 14, Does Not Constitute the "Law of the Case."**

Although the Court's ruling granting plaintiffs' motion for a preliminary injunction may well inform the Court's analysis of the legal issues presented in the parties' respective summary judgment motions, the Court's determination in its injunction ruling, that Mass. G.L. c. 53, § 14, would "likely" be found unconstitutional, does not constitute the "law of the case" concerning the validity of the statute. The equitable factors that the Court appropriately took into consideration in ruling on the injunction motion, in particular the question whether irreparable harm would result if plaintiffs Bob Barr ("Barr") and Wayne Root ("Root") were not accorded a place on the November 2008 general election ballot, are no longer present at the summary

judgment stage. The Court, which no longer is constrained by the condensed time-frame presented by plaintiffs' request for an injunction, and which now has the benefit of the fuller briefing provided in the Secretary's summary judgment memorandum, is free to depart from its earlier ruling concerning the validity of Mass. G.L. c. 53, § 14.

The two cases cited in plaintiffs' summary judgment memorandum do not support plaintiffs' argument that the Court's preliminary ruling on the validity of Mass. G.L. c. 53, § 14, constitutes the law of the case. In Naser Jewelers, Inc. v. City of Concord, 538 F.3d 17 (1st Cir. 2008), the First Circuit held that its decision affirming the district court's denial of a preliminary injunction against enforcement of a city ordinance constituted the law of the case, binding the district court when it later considered motions for summary judgment addressing the validity of the ordinance. In that case, however, the First Circuit ruling, which included a determination that the ordinance "satisfies the requirements for constitutionality" as a "content-neutral regulation," essentially was a ruling on the merits. 538 F.3d at 19. The Court emphasized that the law of the case doctrine does not apply where the initial ruling "was designed to be preliminary," 538 F.3d at 20, as was plainly the case here. See this Court's Preliminary Injunction, dated September 22, 2008 ("This preliminary injunction shall remain in full force and effect until the case is decided on the merits or until modified by further order of this Court"); Memorandum and Order at 8 (finding "likelihood" that plaintiffs will prevail on merits of their constitutional claims). Mank v. Green, 323 F. Supp. 2d 115, 122 n.10 (D. Me. 2004) also cited by plaintiffs, is no more helpful to their argument here. In that case, a district court merely found that its earlier injunction ruling characterizing the relief being sought as equitable in nature constituted the law of the case; the doctrine was not applied to the sort of substantive constitutional claim at issue here.

Accordingly, while the Court may be informed by its prior ruling on plaintiffs' motion for preliminary injunction in reaching final judgment on the constitutionality of the provision at issue here, it is not bound by that prior ruling as law of the case.  See, e.g., Gjertsen v. Board of Election Commissioners, 751 F.2d 199, 202 (7th Cir. 1984) (in action brought by candidates challenging constitutionality of provision establishing signature requirement as prerequisite to ballot access, district court's ruling granting a preliminary injunction "has no preclusive effect – no formal effect at all – on the judge's decision whether to issue a permanent injunction"); Platten v. HG Bermuda Exempted Limited, 437 F.3d 118, 130 n.8 (1st Cir. 2006) ("The law of the case doctrine, however, does not apply to tentative or preliminary rulings.").

As for the substantive issues presented by plaintiffs' claim challenging the validity of Mass. G.L. c. 53, § 14, the Secretary incorporates by reference his summary judgment memorandum.  The Secretary here notes only that plaintiffs are wrong in asserting that no state interest justifies the denial of plaintiffs' request for "substitution" and that "substitution" would be constitutionally required even in the absence of Mass. G.L. c. 53, § 14.  To the contrary, the Secretary's determination that "substitution" may not be used to avoid compliance with the 10,000 signature requirement ensures that all candidates appearing on the ballot demonstrate measurable community support and thus directly serves the state's "vital" interest in avoiding voter confusion, deception, and frustration of the democratic process.  See Secretary's Summary Judgment Memorandum at 1, 8-12.

## II.     Enforcement of the Commonwealth's Election Laws Does Not Result in "Forcing Minor Parties to Postpone Their Conventions."

In their summary judgment memorandum, plaintiffs erroneously suggest that, because the Secretary has allowed "substitution" in one circumstance in which the candidate in question was selected at a national convention that occurred after the Massachusetts deadline for submission

3

of nominating papers, the Secretary in essence is "forcing minor parties to postpone their conventions" in order to gain ballot access. Plaintiffs' Summary Judgment Memorandum at 14-15.

This argument is without merit. As discussed at greater length in the Secretary's summary judgment memorandum, plaintiffs had close to two months following the selection of candidates Barr and Root at the "Libertarian" national convention in May 2006 to comply with the signature requirement set forth in Mass. G.L. c. 53, § 6, and they failed to do so. The fact that the Secretary has allowed "substitution" on one occasion in the past does not warrant the illogical conclusion that political organizations should re-schedule their national conventions to a later date in an attempt to seek "substitution" following the deadline for submission of nominating papers. "Substitution," to the extent allowed by the Secretary in exceptional circumstances in the past, was not intended as a means by which non-party candidates may plan in advance to obtain ballot access without complying with the signature requirement. See Secretary's Summary Judgment Memorandum at 17.[1]

Plaintiffs' related argument, that the Secretary's refusal to allow "substitution" here denied plaintiffs' equal protection rights, also is without merit for the reasons discussed at pages 13-15 of the Secretary's summary judgment memorandum. Anderson v. Firestone, 499 F. Supp. 1027 (N.D. Fla. 1980), cited in plaintiffs' summary judgment memorandum, is not controlling.

---

[1] Nor does the Secretary's adherence to the 10,000 signature requirement require plaintiffs to have "selected their general election candidates far in advance of the July deadline for submission of signatures to the town clerks so that substitution would not be an issue." Plaintiffs' Summary Judgment Memorandum at 16-17. Because the 65-day period between the Libertarian convention and the July filing deadline was a constitutionally valid period of time within which plaintiffs could have gathered signatures in support of Barr and Root, they were not forced to move their convention to an earlier date in order to comply with the statute. Rather, they could have simply complied with the statute by obtaining 10,000 signatures following their convention, but they failed to do so.

The case, which has not been cited in any published court decision except this Court's preliminary injunction ruling, contains only the most cursory discussion of equal protection principles, and it should not be followed here. Application of the signature requirement in the circumstances presented here – where plaintiffs had almost two months following their national convention to gather and file 10,000 signatures in support of Barr's and Root's candidacies – was not a "severe burden" and did not violate any of plaintiffs' constitutional rights, including their right to equal protection. See Secretary's Summary Judgment Memorandum at 8-15.

### III.   The Signature Requirement Did Not Impose a Severe Burden on Plaintiffs.

Plaintiffs also assert that "the facts regarding Plaintiffs' financial burden remain undisputed" and that these "undisputed facts show that Plaintiffs would endure a severe burden obtaining ballot access without substitution." Plaintiffs' Summary Judgment Memorandum at 18. As evidentiary support for the foregoing argument, plaintiffs cite an affidavit by candidate George Phillies, which includes the conclusory statement that "We could not afford to abandon the signatures already collected and 'start fresh.' There was neither enough time, nor enough money to start over." Plaintiffs' Summary Judgment Memorandum at 18 (citing Phillies Affidavit ¶ 23, attached as Exhibit B to Plaintiffs' Summary Judgment Memorandum).

The foregoing statements do not establish that plaintiffs were severely burdened by the signature requirement. As to plaintiffs' contention that they did not have "enough time" to gather signatures for Barr and Root, the question whether plaintiffs' constitutional rights were severely burdened by virtue of the period of time in which they could gather signatures, presents a legal question, not a question of fact. Under established Supreme Court precedent upholding the constitutionality of stricter ballot access requirements (including a provision requiring gathering of more signatures in the same or less time than that at issue here), the period of time

5

within which plaintiffs had to gather 10,000 signatures in support of Barr and Root, whether measured as 65 or 54 days, as a matter of law did not place a "severe burden" on plaintiffs. The signature requirement accordingly was constitutional. See Secretary's Summary Judgment Memorandum at 8-12 (discussing Supreme Court cases). To the extent that plaintiffs' assertion of insufficient time is based on their own particular constraints such as limited numbers of supporters to gather signatures, that would not render the statute invalid. Instead, it would underscore that the statute worked as intended, by keeping particular candidates off the ballot who could not demonstrate a minimum level of voter support.

As to the asserted financial cost of gathering signatures, although the Secretary has no basis upon which to dispute plaintiffs' statement that they expended $40,000 to gather signatures for candidate Phillies, see Plaintiffs' Statement of Undisputed Facts ¶ 23, that fact is not material to the question whether the signature requirement imposed a "severe burden" on candidates Barr and Root, who could have used unpaid volunteers to gather signatures, and because the nominating petitions were available free of charge from the Secretary's Office. See Secretary's Summary Judgment Memorandum at 15 n.13 and Affidavit of Michelle K. Tassinari in Support of Secretary's Motion for Summary Judgment at ¶ 9.[2] Moreover, even assuming arguendo that gathering 10,000 signatures in 54-65 days required expenditures of money (which nothing in the

---

[2] Plaintiffs' own characterization of the Libertarians as "the third largest political party in the United States," Plaintiffs' Preliminary Injunction Memorandum at 3, significantly undercuts their argument on the issue of financial burden. But even assuming that Barr and Root would have had to expend a similar amount of money (as that expended on behalf of Phillies/Bennett) to gather signatures in support of their candidacies, such a financial burden would not constitute a "severe burden." The "burden" imposed by the Massachusetts law is readily distinguishable from the burden at issue in the case cited by plaintiffs, Perez-Guzman v. Gracia, 346 F.3d 229 (1st Cir. 2003), cert. denied, 541 U.S. 960 (2004). Perez involved a provision requiring non-party candidates seeking ballot access to have voter signatures sworn to before a notary; only a lawyer could act as a notary in Puerto Rico, and there were fewer than 8,000 notaries in all of Puerto Rico; and the requirement imposed a cost of at least $1.5 million on a candidate, as a result of the fees charged by notaries to notarize signatures. 346 F.3d at 239-242.

6

record shows), then, once again, if Barr and Root's supporters were unable to provide or attract enough financial support to pay sufficient signature gatherers, that would not render the statutory signature requirement invalid. The Secretary has no obligation to place candidates on the ballot who could not attract enough volunteer signature-gatherers, or enough donors to pay signature-gatherers, to demonstrate a minimum level of popular support.

      For the reasons set forth above and in the Secretary's summary judgment memorandum, the Secretary respectfully requests that the Court deny the plaintiffs' motion for summary judgment and enter summary judgment declaring that the Secretary's determination, not to allow the "substitution" sought by plaintiffs, was constitutional.

      Respectfully submitted,

      SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS,

      By his attorneys,

      MARTHA COAKLEY
      ATTORNEY GENERAL

      /s/ Amy Spector
      Amy Spector, BBO No. 557611
      Timothy J. Casey, BBO No. 650913
      Julie B. Goldman, BBO No. 648489
      Assistant Attorneys General
      Office of the Attorney General
      One Ashburton Place
      Boston, MA  02108
      (617) 727-2200, ext. 2076
      amy.spector@state.ma.us

April 30, 2009

Certificate of Service

      I hereby certify that the above Memorandum was filed through the Electronic Case Filing (ECF) system on April 30, 2009, and thus copies will be sent electronically to the registered participants as identified on the Court's Notice of Electronic Filing (NEF); paper copies will be served by first-class mail to those indicated on the NEF as non-registered participants.

      /s/ Amy Spector
      Amy Spector