# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

BOB BARR, WAYNE A. ROOT,
LIBERTARIAN PARTY OF
MASSACHUSETTS, and LIBERTARIAN
NATIONAL COMMITTEE, INC.,

                Plaintiffs,

        v.

WILLIAM F. GALVIN, in his official capacity
as Secretary of the Commonwealth of
Massachusetts,

                Defendant.

Case No.:  1:08-cv-11340-NMG

## RESPONSE TO DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

In Plaintiffs' Memorandum in Support of their Motion for Summary Judgment, Plaintiffs set forth the undisputed *material* facts in this case.  The facts have remained unchanged since the preliminary injunction phase, where this Court granted Plaintiffs' motion for injunctive relief and ordered the correct Libertarian candidates placed on the ballot.  This case rests solely on an analysis of the wording of the relevant Massachusetts statutes and a determination of the constitutionality of the Secretary's actions in 2008 and in past elections.

Plaintiffs note that the Secretary's statement sets forth a number of facts that are not material to the resolution of his motion.[1]  Plaintiffs also state that, to the extent the Secretary's

---

[1] For example, facts regarding the "divergent" views of George Phillies and Bob Barr (an issue properly left to the political process), facts regarding other minor parties that have been able to meet the signature requirement (a requirement Plaintiffs do not challenge), and facts regarding the actions of one Phillies/Bennett elector who did not support substitution of Barr/Root for Phillies/Bennett (when the Secretary would admittedly not have allowed substitution in any event and when such a situation is highly unlikely to occur again).  It should be noted that this

facts attempt to characterize documents, those documents speak for themselves.  Furthermore, to

the extent the Secretary's facts contain statements of law and references to statutory provisions,

Plaintiffs state that those statutory provisions speak for themselves.

Plaintiffs submit that there are no material facts in dispute in this case and, to the extent

the parties disagree on certain facts or Plaintiffs do not possess sufficient knowledge to dispute

certain facts, these facts are not material to resolving the Secretary's motion.  There are some

points that need to be clarified and drawn to the Court's attention for completeness purposes with

regards to certain facts set forth by the Secretary, as follows:

Secretary's Fact:

5.   The [e-mail from Phillies to the Secretary's Office] forwarded an earlier e-mail, dated

July 31, 2007 (which was incorrectly addressed and previously had not been received by

the Elections Division), inquiring about the preparation of nominating papers for

President and Vice President in the November 2008 general election. Tassinari Aff. ¶ 12

and Tassinari Aff. Ex. A. In the e-mail, Phillies inquired as to whether, if the presidential

candidate identified on the nominating papers were not selected at the "Libertarian Party"

national convention, the name of the nominee selected at the convention could be

"substituted" on the ballot in place of the candidate named on the nominating papers.

Tassinari Aff. Ex. A.

Plaintiffs' Response:

5.   This e-mail inquiry also noted the specific time of the Libertarian Party national

convention (Memorial Day weekend), at which time the general election candidates

---

case is proceeding solely because of its implication on the future conduct of minor parties and the Secretary, and
facts that are unlikely to reoccur are not material to the resolution of this motion.

would be known.  As such, the Secretary's Office was at all times aware that Plaintiffs would be requesting substitution, if necessary, approximately two months before the deadline for submitting nominating papers.  (Tassinari Aff. Supp. Def.'s Mot. Summ. J. Ex. A.)

Secretary's Fact:

6.  A staff attorney in the Elections Division responded in an e-mail on October 26, 2007, stating that, in the event that the Libertarians, following their convention, were to seek to substitute different candidates from those identified on nomination papers, "our Office can prepare a form that allows members of the party to request the substitution of the candidate. All of the electors who appear on the nomination papers will need to complete the form." (emphasis added). Tassinari Aff. ¶ 13; Complaint Ex. A.

Plaintiffs' Response:

6.  In this e-mail response, the Elections Division noted that, if the candidates nominated at the convention proved to be different than those on the nominating papers, it could "prepare a form that allows members of the party to request the substitution of the candidate" and that "[i]f this situation comes up, please contact our Office and we will work with you."  The Elections Division made these statements notwithstanding its knowledge of the date of the Libertarian Party's national convention.  (Tassinari Aff. Supp. Def.'s Mot. Summ. J. Ex. A.)

Secretary's Fact:

28. In 1995, the Secretary's Office received an inquiry regarding ballot substitution for the U.S. Taxpayers Party, which was not a recognized political party in Massachusetts and which held its convention after the deadline for filing nominating papers. Tassinari Aff. ¶

29. The candidates in that case did not qualify for ballot access and therefore substitution ultimately was not allowed. Tassinari Aff. ¶ 29.

Plaintiffs' Response:

28. The Secretary's Office did not only receive an inquiry regarding ballot access for the U.S. Taxpayers Party, but responded to that inquiry, stating that the Secretary had allowed substitution in the past and would continue allow substitution.  (*See* Pls.' Mem. Supp. Summ. J. Ex. C.)

Secretary's Fact:

29. In 2004, the Secretary's office informed the Nader for President campaign that substitution of a vice presidential candidate would not be allowed. Tassinari Aff. ¶ 30 and Tassinari Aff. Ex. F. In particular, the Secretary explained that, unlike the circumstances of the Reform Party in 2000, the Nader campaign's attempt to change its vice-presidential candidate did not result from selection of a different vice-presidential candidate at a national convention occurring after the deadline for filing nomination papers. Tassinari Aff. ¶ 30 and Tassinari Aff. Ex. F.

Plaintiffs' Response:

29. The letter sent by the Secretary to the Nader campaign does not mention anything about the Reform Party's national convention occurring after the deadline for filing nominating papers, much less states that the timing of the convention was the reason that the Reform Party was allowed to substitute but Nader was not being allowed to substitute.  Rather, the letter says that the reason the Reform Party was allowed to substitute is because it was "a national party that conducted a national convention," as opposed to Nader, who was

running as an independent not affiliated with any party.  (*See* Pls.' Mem. Supp. Summ. J. Ex. F.)

Secretary's Fact:

32. None of the presidential electors identified on the nomination papers submitted by the Phillies/Bennett campaign filed a request with the Secretary seeking to withdraw as candidates, nor were any of those electors found ineligible to serve as electors. Tassinari Aff. ¶ 33.

Plaintiffs' Response:

32. None of the electors on the Phillies/Bennett nomination papers sought to withdraw because the Secretary's counsel specifically informed counsel for Plaintiffs that they would not be allowed to fill the vacancies caused by such withdrawal pursuant to Massachusetts General Laws chapter 53, section 14.  (Pls.' Opp. Def.'s Mot. Summ. J. Ex. A; Pls. Opp. Def.'s Mot. Summ. J. Ex. B.)

Secretary's Fact:

34. The Information Technology Department of the Secretary's Office retrieved an e-mail from Mr. Torrey to the Secretary's office, which was incorrectly addressed and therefore was originally undeliverable to the addressee. Tassinari Aff. ¶ 37. The e-mail from Mr. Torrey stated that "I will NOT pledge to vote for Barr/Root in the event that their ticket wins the vote in Mass. and I will NOT sign any agreement to authorize the substitution of their names on [sic] for those of Phillies/Bennet [sic] on the presidential ballot." Tassinari Aff. Ex. J.

Plaintiffs' Response:

34. Torrey nevertheless made it clear in his e-mail that he supported "the RIGHT of the

[LPM] and it's [sic] electors to make a substitution" and that he hoped "the Court will see

fit to rule that the electors have the right to substitute a candidate if they so choose, and

direct the Secretary to develop fair and consistent rules for doing so." (Tassinari Aff.

Supp. Def.'s Mot. Summ. J. Ex. I.) (emphasis in original).

> Respectfully submitted,
>
> BOB BARR, WAYNE A. ROOT,
> LIBERTARIAN PARTY OF
> MASSACHUSETTS, and LIBERTARIAN
> NATIONAL COMMITTEE, INC.,
>
> By their attorneys,
>
> /s/ Matthew C. Baltay
> Matthew C. Baltay, Esq., BBO # 638722
> Jennifer S. Behr, Esq., BBO # 668798
> Amrish V. Wadhera, Esq., BBO # 667495
> FOLEY HOAG LLP
> 155 Seaport Boulevard
> Boston, MA 02210
> (617) 832-1000
>
> John Reinstein, Esq., BBO # 416120
> American Civil Liberties Union of Massachusetts
> 99 Chauncy Street, Suite 310
> Boston MA, 02111

Dated: April 30, 2009                              (617) 482-3170

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, filed through the CM/ECF system, will be
sent electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are
not served through the CM/ECF system on April 30, 2009.

> /s/ Matthew C. Baltay
> Matthew C. Baltay