### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOB BARR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM F. GALVIN, as he is SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS,<br><br>Defendant. | CIVIL ACTION<br>NO. 08-11340-NMG |

## MEMORANDUM OF DEFENDANT SECRETARY OF THE COMMONWEALTH TO PLAINTIFFS' MOTION TO CERTIFY STATE LAW QUESTION TO MASSACHUSETTS SUPREME JUDICIAL COURT

Defendant William F. Galvin, Secretary of the Commonwealth of Massachusetts ("Secretary"), respectfully submits this memorandum in opposition to the motion filed by plaintiffs Bob Barr, Wayne Root, Libertarian Party of Massachusetts, and Libertarian National Committee, Inc. (collectively, "the Libertarians" or "plaintiffs") to certify a state law question to the Massachusetts Supreme Judicial Court. As discussed below, certification of the state law question to the Supreme Judicial Court is not warranted because resolution of the state law question would have no bearing on the federal proceedings. In these circumstances, certification is unnecessary and improper, and the Court accordingly should deny plaintiffs' motion.

**PROCEDURAL BACKGROUND**

The procedural background relevant to the motion is as follows.

Under Massachusetts law, presidential and vice-presidential candidates who are not affiliated with a recognized "political party" may obtain ballot access by filing nomination papers signed by at least 10,000 registered voters.  Mass. G.L. c. 53, §§ 6-10; Barr v. Galvin, 626 F.3d 99, 102 (1st Cir. 2010).  "The fact that non-party presidential and vice-presidential candidates may receive an endorsement from a national political entity does not confer any special ballot access rights."  Barr v. Galvin, 626 F.3d at 102.  In 2008, nomination papers became available in early February, and the deadline for filing such papers with local officials (responsible for certifying that the signatures are those of registered voters) was July 29, with an August 26 deadline for subsequent filing of the papers with the Massachusetts Secretary.  Mass. G.L. c. 53, §§ 7, 10, 47; Barr v. Galvin, 626 F.3d at 102.

In July 2007, George Phillies, identifying himself as chair of the "Libertarian Party of Massachusetts" (which was not a recognized political party in Massaachusetts), sent an e-mail inquiry to the Secretary, asking whether, if the presidential and vice-presidential candidates identified on nomination papers circulated in Massachusetts were not selected at the national Libertarian convention the following May, the names of the convention-backed candidates could be "substituted" on the ballot.  Barr v. Galvin, 626 F.3d at 103.  In October 2007, a staff member in the office of the Secretary responded that the Secretary's office could prepare a form that allows a request for substitution to be made.  Id.  In early 2008, Phillies began to circulate nomination papers identifying himself as a presidential candidate and identifying Chris Bennett as a vice-presidential candidate.  Id.  The papers identified "Libertarian" as the "political designation" by which Phillies and Bennett wished to be identified.  Id.  at 102-03.  At the

2

Libertarian National Committee's convention in late May 2008, Phillies and Bennett were not selected as the Committee's nominees; the convention instead endorsed Bob Barr and Wayne Root as candidates for president and vice-president, respectively.  Id. at 103.  Phillies and Bennett had gathered about 7,000 signatures from Massachusetts voters on nomination papers in support of their candidacies and, on May 28, 2008, Phillies inquired of the Secretary whether Phillies and Bennett, if they qualified for ballot access, could be replaced by Barr and Root, the convention-backed candidates.  Id.  The Secretary responded that such "substitution" was not permissible but that Barr and Root still had almost two months to gather the necessary signatures on their own behalf, and the Secretary similarly notified the Libertarian National Committee that "substitution" was not authorized.  Id.  "Despite the Secretary's declared position, Phillies continued to circulate nomination papers for a Phillies/Bennett ticket," ultimately submitting nomination papers with over 10,000 signatures.  Id.  "In contrast, Barr and Root did not submit any nomination papers, did not provide any evidence that they had secured the necessary signatures, and did not identify any presidential electors."  Id.

**The District Court Proceedings**

Instead, Barr, Root, the LPM, and the Libertarian National Committee filed an action in the District Court, challenging the Secretary's refusal to place Barr and Root on the November 2008 ballot.  Id. at 103.  They sought an injunction requiring the Secretary to "substitute" Barr and Root on the ballot for Phillies and Bennett, and they also sought a declaration that the Secretary's refusal to do so violated their constitutional rights to free speech, freedom of association, and equal protection of the law.  Id. at 103.  On September 22, 2008, this Court granted a preliminary injunction, directing the Secretary to place the names of Barr and Root on the November 2008 ballot in lieu of those of Phillies and Bennett.  Id. at 103-04; Barr v. Galvin

("Barr I"), 584 F.Supp.2d 316, 322 (D. Mass. 2008).  In accordance with this Court's order, the

Secretary placed the names of Barr and Root on the ballot.  Barr v. Galvin, 626 F.3d at 104.[1]

In the spring of 2009, the parties cross-moved for summary judgment.  Id. This Court

held that a right to "substitution" was required by the equal protection clause "'to ensure that the

names of the actual candidates appear on the ballot.'"  Barr v. Galvin, id. (quoting District Court

opinion in Barr v. Galvin ("Barr II"), 659 F. Supp.2d 225, 230 (D. Mass. 2009)).  The Court

further held that Mass. G.L. c. 53, § 14, governing the filling of vacancies in candidates for

"state, city or town" due to a candidate's death, withdrawal, or ineligibility following

nomination, was unconstitutionally vague because it was unclear whether the reference to "state .

. . offices" included presidential candidates and/or presidential electors.  Barr v. Galvin, 626 F.3d

at 104 (discussing District Court's decision in Barr II).  The Secretary appealed.

**The First Circuit Decision**

In November 2010, the First Circuit issued a decision reversing in part this Court's

decision, vacating in part, and remanding the matter to this Court with instructions to abstain on

the vagueness claim.  At the outset of its decision, the First Circuit addressed whether the case

was moot, concluding that it was not.  Barr v. Galvin, 626 F.3d at 104-06.  The First Circuit

reasoned that the LPM might well lose its status as a recognized "political party" as a result of

the 2010 election and that the issues raised in the case concerning "substitution" thus "may recur

and may again involve the LPM and/or the Libertarian National Committee."  Id. at 106.[2]

---

[1]  Although Barr and Root received less than one percent of the vote (less than the three percent
threshold required to qualify the LPM for recognition as a "political party"), a candidate for
United States Senate who identified himself as "Libertarian" received over three percent of the
total votes for that office, with the result that, beginning in November 2008, the LPM became a
recognized political party in Massachusetts.

[2]  Indeed, as a result of the 2010 statewide election in Massachusetts, the LPM no longer is a

I. **The Equal Protection Claim.**

Turning to the merits, the First Circuit reversed this Court's ruling on the equal protection claim, which was based on plaintiffs' assertion that the Secretary had "discriminated" between recognized political parties (which are permitted to designate on the ballot the names of their convention-backed candidates as the party's presidential and vice-presidential nominees) and non-party candidates for president and vice president. Id. Applying the "sliding scale" approach established by the Supreme Court to assess the constitutionality of provisions regulating ballot access, the First Circuit rejected plaintiffs' equal protection claim, concluding that "[t]he Massachusetts ballot access provisions at issue here are nondiscriminatory." Id. at 109. In particular, "[i]n light of the state's legitimate interest in ensuring that the candidates who appear on the statewide ballot have demonstrable support among the voting public, the modest burden imposed upon non-party candidates by requiring them to secure signatures, rather than piggy-backing upon signatures collected for other candidates, is not so onerous as to present an equal protection problem vis-à-vis candidates affiliated with recognized political parties." Id. at 111. More specifically, the First Circuit held that "the time available to Barr and Root when they were directed by the Secretary (and, for that matter, by state law) to procure the signatures necessary" to achieve ballot access "was not so short as to impose an unreasonable burden," insofar as they had approximately 60 days before the filing deadline to obtain 10,000 signatures. Id. at 110. The First Circuit concluded that plaintiffs' "equal protection challenge therefore fails," id. at 111, and the Court "reversed the decision of the district court on the equal protection claim." Id. at 112-13.

---

recognized political party in Massachusetts. See "Massachusetts Directory of Policital Parties and Designations," at http://www.sec.state.ma.us/ele/elepar/paridx.htm.

**II.  The Vagueness Claim.**

While certain aspects of the First Circuit's discussion of plaintiffs' vagueness claim may be susceptible to different readings, the Court was unambiguous in its statement that the state statutory provision in question, Mass. G.L. c. 53, § 14, is <u>not</u> unconstitutionally vague:  "We further conclude that the relevant statute, while not unconstitutionally vague, is in need of interpretive clarification."  <u>Id.</u> at 101.[3]

In its further discussion of the vagueness issue, the First Circuit noted that the statute contained "imprecision" insofar as the reference in section 53 to candidates for "state, city or town office" provided no further elaboration as to whether candidates for presidential elector and/or candidates for president and vice-president "come within its sweep."  <u>Id.</u> at 107.  The Court further noted some ambiguity as to whether the statutory language authorizing vacancies to be filled "by the same political party or persons who made the original nomination," might apply to a non-party like the LPM or to the individuals who signed nomination papers favoring Phillies and Bennett.  <u>Id.</u>  But while expressing some sympathy with plaintiffs' assertion that the statute is not free from ambiguity on these points, <u>see id.</u> (plaintiffs' complaint that section 53 is unclear "strikes a responsive chord"), the Court reasoned that any such imprecision did not render the statute unconstitutional:  "We are not convinced, however, that the lack of definition in the statutory text necessarily invalidates the statute on vagueness grounds."  <u>Id.</u>

The Court further reasoned that, in any event, the statute, "[w]hatever its semantic shortcomings, . . . seems susceptible to clarification by judicial interpretation."  <u>Id.</u>  While further finding that such interpretation of a question of state law should be undertaken by a state court

---

[3]  The Court reiterated this conclusion later in the opinion, explaining that the District Court's statement that an unclear statute may be found unconstitutionally vague "goes too far," as "[t]he mere fact that a statute requires interpretation does not necessarily render it void for vagueness." 626 F.3d at 108.

rather than the federal court, the First Circuit did not certify the question to the state court nor did it direct this Court to do so, instead merely stating that such clarification "should be effected by the Massachusetts courts."  Id.  Moreover, the Court's opinion, although not explicit on the point, suggests that any necessary state court clarification be accomplished through the initiation of a new action in state court at some unspecified time prior to the next election in 2012:

> This does not mean, however, that a federal court should undertake the task of parsing the statutory text to determine its applicability to the substitution of non-party presidential and vice-presidential candidates.  Especially given the lack of urgency – the next presidential election is almost two full years away – we think that the needed interpretation is a task for which the state courts, as the ultimate arbiters of state-law questions, are better suited.

Id.  The Court went on to state that "[t]he Massachusetts courts should therefore be afforded the opportunity to address, in the first instance, the question of the statute's application to non-party presidential and vice-presidential candidates."  Id. at 108.  The Court concluded that this Court therefore should abstain from exercising jurisdiction over the vagueness claim, see id., in order to allow the issue to be addressed – at an unspecified future time – in state court litigation  See also id. at 113 (remanding the matter to this Court "with instructions to *abstain* on the 'void for vagueness' claim . . . .").[4]

**The District Court's Order Following Remand**

Following remand from the First Circuit, this Court issued an order abstaining with respect to the vagueness claim and "staying that claim pending a state court interpretive clarification of the state statute."  See Memorandum & Order, dated December 13, 2010, at 4;

---

[4] The First Circuit further noted that "[o]nce the state courts clarify section 14's relevance (if any)" to the "substitution" sought by plaintiffs, "such a clarification, however it comes out, would end the 'void for vagueness' argument."  Id. at 108.  In so stating, however, the First Circuit did not suggest the need for any further District Court proceedings following such anticipated state court litigation other than, presumably, an order dismissing the vagueness claim (which, as a practical matter, would be rendered moot by a state court interpretation of Mass. G.L. c. 53, § 14, regardless of which way the statute were interpreted in state court).

see id. at 3 (abstaining and "staying the 'void for vagueness' claim pending determination in a Massachusetts court with respect to the question of the statute's application to non-party presidential and vice-presidential candidates").  In determining to stay rather than dismiss the vagueness claim, the Court explained that, consistent with the principles of Pullman abstention, "deferral" (or a stay) is proper rather than dismissal in cases where "settling the question of state law may obviate the need to resolve a significant federal constitutional question."  Id. at 2.

## ARGUMENT

**I.      CERTIFICATION OF THE STATE LAW QUESTION IS UNWARRANTED, BECAUSE PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT RESOLUTION OF THE STATE LAW QUESTION WOULD HAVE ANY BEARING ON THE FEDERAL PROCEEDINGS.**

Under Massachusetts Supreme Judicial Court Rule 1:03, the Supreme Judicial Court "may answer questions of law certified to it by" the United States Supreme Court, a federal court of appeals, or a federal district court, in cases in which the federal proceeding involves questions of Massachusetts law "which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court."  Mass. Supreme Judicial Court Rule 1:03, Section 1.  By its terms, certification is authorized only in those cases in which the state law question "may be determinative of the cause then pending" in the federal court.  Id.

Although plaintiffs repeatedly refer to the question of the proper interpretation of Mass. G.L. c. 53, § 14, as "cause determinative," they fail to identify any manner in which state court interpretation of the foregoing provision would have any bearing on the pending federal proceedings.  The First Circuit's decision left no questions of law to be resolved by the District Court following remand.  Specifically, as discussed in part above, the First Circuit (1) rejected

plaintiffs' claim that the Secretary's denial of "substitution" violated plaintiffs' equal protection rights vis-à-vis major party candidates; (2) concluded that Mass. G.L. c. 53, § 14, was not unconstitutionally vague; (3) rejected plaintiffs' claim that the Secretary was estopped from refusing to "substitute" Barr and Root on the ballot; and (4) rejected plaintiffs' further claim that the Secretary's past allowance of "substitution" to certain non-party candidates violated plaintiffs' equal protection rights vis-à-vis such other non-party candidates; on this later issue, the First Circuit found that the past circumstances were distinguishable but that, in any event, "any historical variations in treatment will be rendered irrelevant once the Massachusetts courts have clarified the way in which state law operates."

The First Circuit's decision left no question of law pending in the federal proceeding as to which state court interpretive clarification of Mass. G.L. c. 53, § 14, could have any bearing; and a ruling by the Supreme Judicial Court that Mass. G.L. c. 53, § 14 authorizes the "substitution" sought by plaintiffs (or does not do so) will not assist this Court in determining any federal issue.  In short, the sole basis for which Rule 1:03 authorizes certification – that is, where interpretation by the Supreme Judicial Court of a state law provision is "determinative" of the federal proceedings – is absent here.

While this Court (on remand from the First Circuit) stayed the vagueness claim "pending a state court interpretive clarification," the First Circuit's conclusion that Mass. G.L. c. 53, § 14 is "not unconstitutionally vague," 626 F.3d at 101, leaves nothing to be resolved by this Court with respect to the vagueness claim, other than the procedural necessity of dismissing the claim (which will as a practical matter will be rendered moot following <u>any</u> state court interpretation of the statute).  Accordingly, although state court clarification of the proper meaning of Mass. G.L. c. 53, § 14, may well guide plaintiffs' future conduct, such a clarification will have no bearing on

any issues pending before this Court, and certification of the state law question to the Supreme

Judicial Court therefore is unwarranted.

The cases cited by plaintiffs in support of their request for certification are

distinguishable, because in those cases, resolution of the state law question either would avoid

the need for the federal court to resolve a federal constitutional claim or would otherwise

determine resolution of the federal claim.  See, e.g, Romero v. Colegio de Abogados de Puerto

Rico, 204 F.3d 291, 305-06 (1st Cir. 2000) (certification of question whether, under Puerto Rico

law, bar association was authorized to impose mandatory life insurance requirement, where a

determination that the bar association was not so authorized would avoid the need for a federal

court to decide whether the mandatory requirement violated plaintiff's constitutional rights);

Turner v. City of Boston, 2011 WL 379410 * 2, 7 (D. Mass. February 7, 2011) (certifying to

Supreme Judicial Court state law questions concerning whether removal of City Councillor

Chuck Turner was authorized under state law and whether removal was civil or criminal as a

matter of state law, where a state court determination that the removal was unauthorized by state

law and that the removal was civil rather than criminal could obviate the need for the federal

court to reach plaintiffs' federal constitutional claims, which rested on the assertion that the

removal was contrary to state law).[5]

---

[5]  See also In Re Hundley, 603 F.3d 95,  98-99 (1st Cir. 2010) (on appeal from federal
bankruptcy court decision, First Circuit certified to Massachusetts Supreme Judicial Court a state
law question concerning debtor's property rights, where bankruptcy proceeding would be
"wholly determined by resolution of the state court dispute," insofar as determination of the
bankruptcy debtor's obligations under federal bankruptcy law depended on scope of debtor's
property rights as governed by state law); Zecco v. Hess Corp., 2011 WL 832504 * 9 (D. Mass.
March 3, 2011) (certification of state law question concerning proper application of rule against
perpetuities, where resolution of merits of contract dispute in federal action based on diversity
jurisdiction depended on proper interpretation of state law).

In the foregoing cases, certification of the state law question could eliminate the need for the federal court to resolve a federal constitutional question because the federal claim rested entirely on a <u>particular</u> interpretation of state law.  Here, in contrast, the only pending federal claim – a vagueness claim – has already been rejected and, as the First Circuit further found, the vagueness claim in any event would be defeated by the mere <u>fact</u> of a definitive state court interpretation of Mass. G.L. c. 53, § 14, regardless of <u>which</u> interpretation a state court gives to the statute.  626 F.3d at 108 ("once the state courts clarify section 14's relevance (if any) to substitution of presidential and vice-presidential candidates, such a clarification, however it comes out, would end the 'void for vagueness' argument.").  Moreover, the inappropriateness of certification here is further highlighted by the fact that the First Circuit, in remanding the matter to this Court, did <u>not</u> direct this Court to certify the state law question to the Supreme Judicial Court.  Contrast <u>Romero</u>, <u>supra</u>, 204 F.3d at 305 (remanding matter to district court and specifically directing district court to certify question to Supreme Court of Puerto Rico).

**II.   IF THIS COURT CERTIFIES A QUESTION OF STATE LAW TO THE SUPREME JUDICIAL COURT, IT SHOULD FRAME THE QUESTION CONSISTENT WITH THE FACTUAL CIRCUMSTANCES PRESENTED HERE.**

In their Proposed Order of Certification, plaintiffs request that the Court certify the following question to the Supreme Judicial Court:

> Does Mass. Gen. Laws. ch. 53, § 14 apply to presidential elections and provide political organizations or minor parties not recognized as 'political parties' under Mass. Gen. Laws ch. 50 § 1 with a means to substitute the presidential and vice-presidential candidates chosen at their conventions for those listed on their nomination papers?

The Secretary respectfully requests that, in the event this Court certifies a question of state law to the Supreme Judicial Court, the question be tailored specifically to the particular factual circumstances presented in this case, as follows:

Where presidential and vice-presidential candidates of a particular political designation (a) do not submit nomination papers containing 10,000 signatures in support of their candidacies, as required by Mass. G.L. c. 53, § 6, but (b) are endorsed by a convention held by a political organization (related to that political designation but not recognized as a political party in Massachusetts under Mass. G.L. c. 50, § 1), and (c) the convention concludes far enough in advance of the deadline for submitting nomination papers to provide a constitutionally sufficient time for the candidates to gather 10,000 signatures in support of their candidacies; does Mass. G.L. c. 53, § 14, authorize placement of such candidates' names on the ballot in place of other presidential and vice-presidential candidates of the same political designation, who have met the eligibility requirements for ballot placement through the submission of nomination papers containing 10,000 signatures in support of their own candidacies, but who were not endorsed at the related political organization's convention?

Respectfully submitted,

SECRETARY OF THE COMMONWEALTH
OF MASSACHUSETTS,

By his attorneys,

MARTHA COAKLEY
ATTORNEY GENERAL

/s/ Amy Spector
Amy Spector, BBO No. 557611
Julie B. Goldman, BBO No. 648489
Timothy Casey, BBO No. 650913
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
(617) 963-2076
amy.spector@state.ma.us

April 6, 2011

<u>Certificate of Service</u>

       I hereby certify that the above Memorandum was filed through the Electronic Case Filing (ECF) system on April 6, 2011, and thus copies will be sent electronically to the registered participants as identified on the Court's Notice of Electronic Filing (NEF); paper copies will be served by first-class mail, postage pre-paid, to those indicated on the NEF as non-registered participants.

                               <u>/s/ Amy Spector</u>
                               Amy Spector